# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GARY LEE GOFORTH,

   *Petitioner*,

vs.

GEORGE CHOCK, *et al.*,

   *Respondents.*

2:06-cv-00303-RCJ-RJJ

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on the respondents' renewed motion (#20) to dismiss. Respondents seek to dismiss the petition, as amended, as time-barred under the federal one-year limitation period in 28 U.S.C. § 2244(d)(1) as well as on the basis of procedural default. The Court reaches only the federal limitation issue.

### *Background*

Petitioner Gary Lee Goforth was convicted, pursuant to a guilty plea, on October 19, 2000, in Nevada state court of two counts of possession of a visual presentation depicting sexual conduct of a person under sixteen years of age. He was sentenced to two consecutive terms of twenty-four to seventy-two months. The sentence was suspended, and petitioner was placed on probation for five years. Petitioner did not file a direct appeal.[1]

---

[1] The Court's recital of the relevant state court procedural history, which is not challenged herein, is taken from the February 10, 2006, Order of Affirmance by the Supreme Court of Nevada, which is filed with #4-2. The respondents state in the renewed motion to dismiss that the Court decided in its prior order (#19)
(continued...)

The time for filing a direct appeal under Nevada state practice expired on Monday, November 20, 2000.

More than a year and five months later, on April 22, 2002, petitioner filed a state post-conviction petition in state district court.[2]

On November 26, 2002, while his first state post-conviction petition still was pending in the state district court, petitioner filed his first federal petition in this Court, in No. 2:02-cv-01560-PMP-PAL. On January 29, 2004, the Court dismissed the first federal petition without prejudice because none of the claims in the petition had been exhausted. Petitioner did not appeal the without prejudice dismissal of the wholly unexhausted federal petition.

On January 27, 2004, the state district court denied the first state post-conviction petition as untimely. The Supreme Court of Nevada affirmed on July 27, 2004.

On August 4, 2004, petitioner filed a second federal petition in this Court, in No. 2:04-cv-01078-JCM-PAL. On June 7, 2005, the Court dismissed the second federal petition without prejudice because, once again, none of the claims in the federal petition had been exhausted. The two federal claims in the second federal petition had been raised for the first time on the post-conviction appeal to the Supreme Court of Nevada, and the state high court declined to consider any claims that were not raised in the first instance in the state district court. While petitioner sought reconsideration of the second federal dismissal, which was denied, petitioner did not appeal the without prejudice dismissal of the second, once again wholly unexhausted, federal petition.

---

[1](...continued)
that exhibits from former proceedings could be adopted in this matter. The Court's intention, however, was that the respondents need not re-file any exhibits previously filed in the present matter. Counsel should note for the future that it is the Court's preference -- both to expedite review in the district court as well as on appeal -- that an indexed set of state court record exhibits be filed in the then-current matter, with the attachments identified by the exhibit number. *Cf*. No. 2:05-cv-00542-PMP-GWF, ## 38 & 39. The Court will not delay action in the present case for such a filing, however. The Court has been able to cull the necessary information from the available suit records.

[2]Petitioner was not incarcerated in a state prison at any time, so the prison mailbox rule would not apply to determine the date of constructive filing of his state and federal papers for purpose of calculating any tolling of the federal limitation period. That is, the actual filing date with the respective clerk controls as to all of his state and federal filings. When Goforth filed his first state petition, he faced parole violation allegations.

1  Thereafter, on July 27, 2005, petitioner filed a second state post-conviction petition. The state district court denied the petition as untimely, and the Supreme Court of Nevada affirmed on this basis on February 10, 2006.

On March 10, 2006, filed the present federal petition, which is his third federal petition.

### *Governing Law*

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in the context presented here, a federal habeas petition must be filed within one year after "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Under Section 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, a state post-conviction petition that is dismissed as untimely is not "properly filed" for purposes of § 2244(d)(2) and thus does not statutorily toll the federal limitation period. *Pace v. Diguglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).

Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, ___ U.S.___, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

////

## *Discussion*

It is undisputed that, absent tolling, the present federal petition is untimely. Unless otherwise tolled, the federal limitation period expired one year after the time expired to file a direct appeal on November 20, 2000, *i.e.*, on or about November 20, 2001.

**Claimed Grounds for Tolling**

**November 20, 2000 through February, 2002**

Petitioner contends that he can establish equitable tolling and/or statutory tolling under 28 U.S.C. § 2244(d)(1)(B) and/or 28 U.S.C. § 2244(d)(1)(D)[3] because he was under house arrest for 442 days through January or February 2002, he was advised during the plea colloquy that he had no right to appeal, and the public defender did not turn over his file to him. He maintains that, due to these impediments, he did not discover that he had a basis for seeking post-conviction relief until after he was discharged from house arrest and reviewed the affidavit for warrant in his case file at the county courthouse in January or February 2002.

The Court is not persuaded that the factual showing tendered by petitioner in support of the above argument is sufficient to raise a question warranting an evidentiary hearing, much less that petitioner has established a basis for either equitable or statutory tolling for this period.

---

[3]Section 2244(d)(1) establishes the following accrual rules for habeas petitions or claims:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner asserts that the state district judge told him at his sentencing that he had waived his right to a direct appeal as a consequence of his plea. Petitioner supports this factual assertion only with a vague reference to "see record."[4] What the guilty plea agreement instead reflects is that Goforth waived his right to appeal the conviction "unless the appeal is based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035."[5] In all events, anything that petitioner was told vis-à-vis his right to take a direct criminal appeal in the state system would not constitute a circumstance, extraordinary or otherwise, standing in petitioner's way and preventing him from filing either a state or federal post-conviction petition. The reference to statements regarding his right to take a direct appeal begs the question with regard to the timeliness of his federal habeas petition.

Petitioner further refers, with few specifics, to the county public defender allegedly withholding his file from him. He asserts that the affidavit of warrant, upon which he principally relies in his claims, was "procedurally handed over to the Public Defender and subsequently withheld (despite the petitioner's request to review his file) in preparing and presenting a scenario to cause the petitioner to plea [sic] guilty and avoid trial."[6] To the extent that petitioner is referring to an alleged pre-plea refusal of defense counsel to allow him to review the criminal discovery file, that of course was a matter that he should have insisted be resolved before he pled guilty to possession of child pornography. To the further extent, if any, that petitioner relies upon this circumstance as a basis for tolling, he has failed to come forward with specific evidence tending to establish that, during the period from November 2000 through February 2002, he actually made requests to the public defender for his file. In prior cases where the Court has considered withholding of the defense file by counsel as a basis for tolling, petitioners have come forward with documented evidence of multiple

---

[4] #22, at 10-11.

[5] No. 2:04-cv-01078-JCM-PAL, #5, Ex. 2, at 3, ¶ 6.

[6] #22, at 13-14.

written requests to counsel for the file, followed by state court motions for production of the file, and then motions to compel compliance with the state court's production orders.[7] An assertion only that counsel refused petitioner's request to see the file before his plea falls far short of demonstrating either the requisite extraordinary circumstances or the requisite diligence to sustain a claim for equitable tolling for the time period after the plea. *Cf. Spitsyn, supra* (the Ninth Circuit cataloged the petitioner's extensive efforts to, *inter alia*, secure the file from counsel, in discussing the egregious conduct required for equitable tolling).

Petitioner's principal factual argument, however, for the period from November 2000 through February 2002 is that he could not discover that he had a basis for seeking post-conviction relief until after he was discharged from house arrest and reviewed the affidavit for warrant in his case file at the county courthouse in January or February 2002.

The affidavits tendered in support of this factual argument similarly fall far short of demonstrating by competent evidence that, despite diligent requests and effort on his part, Goforth was prevented from discovering and pursuing his claim while under house arrest.

Petitioner tenders his own affidavits as to alleged statements by officers.

In the first affidavit, Goforth relates statements allegedly made in 2005 by an officer "whose name I do not recall." According to Goforth, the officer had been called to his apartment after he "had been on an approved job interview sometime between October 31, 2001, and January 2002 prior to [my] release from house arrest under the custody supervision of Officer Susan Aller." He asserts that, in 2005, the unnamed officer – in the presence of Officer Ruby Bledsoe, then his current supervising officer, and an Officer Lupe – "said that house arrest conditions were much more restrictive at the time I was on house arrest." Goforth further asserts that, after he referred to the state court time-bar issue, the officer said "something like 'during the time that you were on house arrest . . . you wouldn't have been able to come up for air let alone go to the court house to review your records." #22, Ex. 1.

---

[7] The Court addresses the petitioner's claim that he was precluded from seeking court action because he was under house arrest *infra*.

In the second affidavit, petitioner attests to a telephone conversation with Officer Ruby Bledsoe on June 21, 2007. According to Goforth's affidavit, Officer Bledsoe also could not recall the name of the officer referenced in the first affidavit, but she remembered the conversation "about the incident and the conditions of my house arrest." According to the affidavit, "the whole thing was so unexpected and unusual, that she had even talked about it with her supervisor." Officer Bledsoe further allegedly stated to Goforth, after petitioner referenced the pending time-bar issue in this federal case, "something like 'that was the excuse they were using before . . . do you see any resolution any time soon?" The affidavit relates no specific assertions by Officer Bledsoe affirmatively stating that petitioner could not review his case file and pursue post-conviction relief while under house arrest.[8]

Petitioner's affidavits establish that he in fact was allowed to go out into the community from his residence while on house arrest for authorized purposes such as job interviews and, presumably, employment. At bottom, petitioner seeks to establish that he was prohibited from reviewing his criminal case file at the courthouse based upon an alleged statement in 2005 by an unnamed officer – who was not his supervising officer – opining as to what petitioner could have done while under supervision by a different officer in 2001.

Even taking petitioner's affidavits at face value, petitioner presents no evidence that he actually requested an opportunity to review his criminal case file while under house arrest. Petitioner presents no evidence that such a request was denied after being made. That is, petitioner presents no competent evidence directly by and from the officer then actually responsible for his supervision, apparently Officer Susan Aller, attesting that petitioner requested to be allowed to review his case file at the courthouse, that she denied this request, and that the conditions of his house arrest unqualifiedly prevented him – despite his First Amendment right of access to the courts – from reviewing his case file and pursuing a post-conviction petition while under house arrest.

/ / / /

---

[8] #22, Ex. 2.

Petitioner's reliance upon an alleged statement years after the fact by a mystery officer who was not responsible for his supervision at the relevant time regarding what the officer thought that petitioner could do while under supervision by another officer fails to establish that extraordinary circumstances stood in petitioner's way and prevented him from discovering and pursuing his claims. Nor does the unnamed officer's alleged statement establish that petitioner diligently pursued his rights between November 2000 and February 2002.[9]

Petitioner accordingly has failed to come forward with evidence tending to establish a viable basis for either equitable or statutory tolling for the period from November 2000 through February 2002.

***February 2002 through March 10, 2006***

However, even if the Court were to assume, *arguendo*, that petitioner conceivably might establish a basis for equitable or statutory tolling through February 2002, or at least create an issue for a hearing for this earlier period, the present federal petition was not filed until more than four years later, on March 10, 2006. Petitioner does not identify a viable basis for either equitable or statutory tolling over this four-year period.

Under *Pace, supra*, the two untimely state court petitions did not statutorily toll the federal limitation period during these four years.

---

[9] Petitioner additionally has presented an affidavit herein by his present or former wife, Laura Goforth. She attests: (1) that Detective Lorraine Newman, the affiant on the warrant for arrest, told her in May 1998 that the forensic computer examination allegedly showed that petitioner did not have a history of opening, viewing and deleting unlawful visual depictions and that the computer allegedly had only one unopened file containing unlawful visual depictions; (2) that she "inform[ed] my husband at the time, Gary Goforth of the information I'd received from Detective Newman;" and (3) that "he made attempts to get Kathryn Wolff [his public defender] to action [on] the information and further investigate it and possibly mitigate his defense in criminal charges he faced, or better his position in a possible plea agreement." *Affidavit of Laura Goforth*, filed with #18-3, at electronic docket page 25 of 33. Laura Goforth's affidavit – which was presented by petitioner – therefore would tend to establish that petitioner was on notice that the forensic computer examination had alleged potential exculpatory value long before the period from November 2000 through February 2002. Moreover, according to the affidavit for the arrest warrant, discussed further *infra*, Goforth maintained to officers at the time of the search that he had just recently downloaded a number of files and was uncertain as to their content. It thus would appear that Goforth was aware of his "recent download" defense from the outset, nonetheless chose to enter a guilty plea even after being informed by his wife regarding the forensic computer examination, and did not pursue any claims until 2002, after the time for seeking state and federal post-conviction relief had expired. In all events, however, whether he otherwise was on notice or not, petitioner has failed to establish that he pursued his rights diligently and that some extraordinary circumstance stood in his way during the period from November 2000 through February 2002.

The United States Supreme Court has reaffirmed the categorical nature of the rule stated in *Pace*:

> We therefore reiterate now what we held in *Pace*: "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."

*Allen v. Siebert*, ___ U.S. ___, 128 S.Ct. 2, 4, 169 L.Ed.2d 329 (2007)(quoting *Pace* quoting prior case law)(per curiam). The two untimely state petitions accordingly had no statutory tolling effect.[10]

Moreover, under well-established law, petitioner's two prior – wholly unexhausted – federal petitions did not toll the federal limitation period with regard to this later petition. *See Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).[11]

Petitioner maintains that the state district court "allowed the public defender to remain on the case through [the state post-conviction] proceedings (despite a conflict of interest) wherein, the public defender offered no assistance to the petitioner."[12] The state court minutes and related materials reflect the following. The public defender represented petitioner in his criminal proceeding in 2000 and remained his counsel thereafter during the 2002 parole revocation proceeding. When petitioner's first *pro se* state post-conviction petition came before the state district court, the public defender still was counsel of record

---

[10] The Court further notes that, subject to the date of issuance of the remittitur on the first state post-conviction appeal, approximately eleven months passed between the two state post-conviction proceedings.

[11] In petitioner's opposition memorandum, he refers to the opinion in *Jorss v. Gomez*, 266 F.3d 955 (9th Cir. 2001), but he supplies no argument applicable to this case. #22, at 23. In *Jorss*, the Ninth Circuit initially held that the petitioner could demonstrate equitable tolling based upon the district court's earlier dismissal of a purportedly mixed petition without first providing the petitioner an opportunity to delete the ostensibly unexhausted claims. In this case, in contrast, petitioner provides no argument establishing that his prior two petitions were dismissed in error. Both of Goforth's federal petitions were wholly unexhausted and therefore were properly dismissed without prejudice. *See, e.g., Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153-54 (9th Cir. 2006)(second federal petition filed after the district court dismissed a previous petition without prejudice for failure to exhaust state remedies did not relate back to the original petition nor was equitable tolling available on the facts presented). Moreover, the opinion in *Jorss* upon which petitioner relies was entirely withdrawn by the superseding opinion at 311 F.3d 1189 (9th Cir. 2002), in which the Ninth Circuit decided the case on an entirely different basis and did not reach the equitable tolling issue. *Jorss* accordingly provides no support to petitioner.

[12] #22, at 4.

-9-

and was called before the court. On September 24, 2002, the assistant public defender orally moved to withdraw as counsel due to the allegation of ineffective assistance of counsel. Thereafter, on both petitioner's first and second *pro se* state post-conviction petitions, the public defender continued to make a record when required by the state court to appear that the defender had a conflict and could not represent petitioner on his requests for post-conviction relief. The state district court, however, continued to require the public defender to appear in the case, up through proceedings in November 2005. Throughout the state post-conviction proceedings, petitioner continued to prepare and file all of his papers *pro se*, without any assistance, advice or interference from the public defender.[13]

Petitioner fails to demonstrate how the foregoing irregularity in the state district court proceedings prevented him from filing a timely federal petition, as there is no evidence tendered that the public defender's office did or said anything to cause petitioner to not pursue either state or federal post-conviction relief. As petitioner himself maintains, "the public defender offered no assistance to the petitioner." The public defender instead consistently represented to the state court when required to appear that the office could not represent petitioner on the state post-conviction petitions. Indeed, petitioner filed two state post-conviction petitions and two federal petitions – on April 22, 2002, November 26, 2002, August 4, 2004, and July 27, 2005 – notwithstanding the state district court's refusal to allow the public defender to withdraw as counsel of record.[14]

What petitioner instead suggests is that the failure to allow the public defender to withdraw precluded the state district court from appointing other counsel for him on his state post-conviction petitions. This circumstance similarly did not prevent petitioner from filing a timely federal petition. Petitioner has no constitutional right to assistance of counsel in either

---

[13] #18-2, at electronic docket pages 29 & 31-35; #28, Ex. I, at 8-10.

[14] While the state district court apparently initially dismissed the *pro se* first state post-conviction petition because it was not filed through counsel, the petition ultimately was adjudicated – based on its original *pro se* filing date of April 22, 2002 -- and found to be untimely. See July 27, 2004, Order of Affirmance, filed with #4-1.

state or federal post-conviction proceedings. His lay status does not provide a basis for equitable tolling. *See Rasberry v. Garcia*, 448 F.3d 1150, 1153-54 (9th Cir. 2006)(lay status and lack of legal sophistication did not provide a basis for equitable tolling); *cf. Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1985)(inmate who maintained that he was illiterate and that the inmate law clerk who had been assisting him had been released failed to demonstrate sufficient cause to excuse his procedural default). Thus, any resulting failure of the state district court to appoint petitioner counsel who would assist him on his two *pro se* state petitions – which he filed entirely *pro se* without assistance or advice from the public defender – provides no basis for tolling of the federal one-year limitation period for filing a federal petition.

Petitioner therefore cannot establish a viable basis for equitable or statutory tolling over the four-year period preceding the filing of the present federal petition.[15]

### *Claim of Actual Innocence*

Finally, Goforth contends that the petition should not be dismissed as time-barred because he can establish actual innocence. It remains an open question whether a habeas petitioner can avoid application of the federal one-year limitation bar by demonstrating that a fundamental miscarriage of justice would result if review on the merits were denied, based upon a showing that the petitioner is actually innocent. *See Majoy v. Roe*, 296 F.3d 770, 775-77 (9th Cir. 2002). This "actual innocence gateway" is available to allow review of a claim otherwise barred under the procedural default doctrine, but it has not been determined as yet as to whether a showing of actual innocence may override the federal limitation bar. This

---

[15] Petitioner refers repeatedly in his opposition memorandum to the holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the prosecution's suppression of material exculpatory evidence violates due process. Once again, however, he does not make any principled argument as to how *Brady* applies to the time-bar issue in this case, particularly given his allegation that the prosecution provided the alleged exculpatory evidence to the defense during the criminal proceedings but his counsel then allegedly withheld the material from him. *Brady* has nothing to do with the untimeliness of the federal petition.

Petitioner further relies upon newspaper articles to establish a general improper relationship between the county public defender and the district attorney. Any such alleged improprieties in this regard, if any, had no bearing on petitioner's pursuit of state and federal post-conviction remedies, which he pursued *pro se*.

-11-

1 unresolved legal question need not be resolved in the present case, however, because
2 petitioner has not tendered a showing in opposition to the motion to dismiss that in fact would
3 satisfy the exacting standard of the actual innocence gateway.

In cases where the conviction being challenged followed a trial, in order to satisfy the actual innocence gateway, a petitioner must come forward with new reliable evidence that was not presented at the trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *See,e.g. House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064, 2077-78, 165 L.Ed.2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Majoy*, 296 F.3d at 775-76; *see also Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003), *cert. denied*, 124 S.Ct. 2039 (2004)(evidence need only be newly presented, not newly discovered). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See,e.g., Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-19, 120 L.Ed.2d 269 (1992).[16] The court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial," and "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332, 115 S.Ct. at 869.

/ / / /

---

[16] In *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), the Supreme Court extended the availability of the actual innocence exception to the procedural default bar to challenges to convictions based upon a guilty plea. In doing so, however, the Court added a required showing in addition to the showing of actual innocence under *Schlup v. Delo* as outlined in the text. That is, the Court required that the petitioner, in addition to showing actual innocence of the charge to which he pled, must also show his actual innocence of any more serious charges foregone by the prosecution in the course of the plea bargaining. 523 U.S. at 624, 118 S.Ct. at 1612. It appears that the Supreme Court added this requirement because of the practical reality in plea-bargained cases that defendants often plead to lesser crimes as to which there may a substantial question of guilt in order to avoid a possible greater penalty on a more serious charge. *See also* 523 U.S. at 634-35, 118 S.Ct. at 1617 (Scalia, J., dissenting).

In the present case, respondents have not identified what, if any, additional charges were brought against the petitioner that were dismissed pursuant to the plea bargain. The Court accordingly has proceeded on the assumption that either petitioner was originally charged with only the charges to which he pled or the alleged evidence of actual innocence would pertain to all such original charges. The additional requirement of *Bousley* for plea bargained cases accordingly has no bearing on the Court's analysis herein.

In the present case, Goforth urges that the State's forensic computer evidence – evidence that was developed prior to his plea – establishes that he could not possibly have knowingly and willingly possessed the child pornography found on his computer. He maintains that arrest warrant affidavit and the computer forensic report establish that the child pornography files were downloaded on the same day and at the same time that the search warrant was being executed, such that it was not possible that he viewed and knowingly and willingly possessed the child pornography files prior to his computer being seized by the police.

Out of an abundance of caution, the Court directed the respondents to file supplemental exhibits containing, *inter alia*, the evidence that Goforth claims establishes his actual innocence, including the computer forensic evidence, the search and arrest warrants, and the supporting affidavits for the warrants.

The search warrant was executed on November 25, 1997, as part of an investigation of Goforth's alleged inappropriate relationship with and stalking of a young boy.[17] The affidavit submitted later in support of the arrest warrant reflected that, *inter alia*, the following exchange with Goforth occurred during the execution of the search warrant:

> . . . Goforth was asked if his computer contained any sexually explicit photos of children. Goforth stated that he had just, within the last 10-15 minutes, downloaded some pictures. Goforth stated that he has downloaded large numbers of photos in the past and that occasionally there are nude photos. Goforth stated that he deletes these photos and keeps only photos of boys that are not sexually explicit. Because he had not viewed the last group of photos that he downloaded, he was not sure of its contents.

#28, Ex. G.

The report of the forensic computer investigator, Robert Wideman, included the following:

---

[17] According to the investigative materials, Goforth, *inter alia* maintained a website with photographs of the twelve-year-old boy and stories professing his love for the boy. The materials further reflected that Goforth posted messages on the alt.support.boy-lovers newsgroup declaring his love for the boy and chronicling his stalking of the boy after his parents attempted to cut off all contact. #28, Exhs. A, B-1 & G.

> Examination of the directory structure [on Goforth's hard drive] revealed an anomolie [sic] in the operating systems directory. The suspect computer uses a Windows 95 operating system, which upon installation, creates a directory called "WINDOWS" and places all files needed for the systems in that directory or sub directories. Within the "TEMP" sub directory, [Investigator] Wideman discovered a sub-sub directory entitled "TEMPX". That directory is not a part of the Windows 95 directory system. Inside the "TEMPX" sub-sub directory, Investigator Wideman discovered 36 files, formatted in joint photograpic experts group (JPG) standard form. . . . .
>
> Of the thirty-six files in the "TEMPX" sub directory, six files were found to be graphic images depicting children under the age of sixteen, engaged in clearly sexual conduct. . . . .
>
> . . . . .
>
> The location of the files in the directory structure of the computer is indicative of an [attempt] to conceal the [existence] of the files from other potential users. The placement of the sub directories is not convenient file organization and is in an area normally exclusive to the computer operating system. That fact makes it unlikely that the files in question would be inadvertently encountered by a casual user.

#28, Ex. F, at 189-90.

The Wideman report further identified the six files with child pornography that were found in the "TEMPX" sub-subdirectory by file name, size, date, and time:

| | | | |
|---|---|---|---|
| !!2YNB2.JPG | 29,351 | 11/25/97 | 13:28:48 |
| !!BOY9.JPG | 95,530 | 11/25/97 | 13:16:10 |
| !1118KSS.JPF | 52,161 | 11/25/97 | 12:55:12 |
| !1STSUCK.JPG | 19,784 | 11/25/97 | 12:47:12 |
| 0A9080~1.JPG | 17,998 | 11/25/97 | 13:32:20 |
| KIDSEX4.JPG | 48,071 | 11/25/97 | 12:54:44 |

#28, Ex. F., at 189. See also *id.*, Ex. G (summary of Wideman report in affidavit for arrest warrant).

The evidence presented does not provide a basis for applying the actual innocence gateway, if otherwise applicable to a time-bar defense, or for directing an evidentiary hearing in connection with same. This conclusion follows even if the Court assumes, *arguendo*, that the foregoing evidence constitutes "new" evidence for purposes of the *Schlup* actual innocence gateway.

/ / / /

1    Petitioner must come forward with new reliable evidence tending to demonstrate that
2 it is more likely than not that no reasonable juror would have found him guilty beyond a
3 reasonable doubt. Nothing – in anything submitted by petitioner in support of his claim of
4 actual innocence or in any of the supplemental exhibits filed at the direction of the court –
5 establishes or tends to establish, as Goforth alleges, that it was not possible for him to
6 knowingly and willfully possess the child pornography that undeniably was found on his
7 computer.

8    In particular, nothing in the evidence presented establishes the time of day at which
9 Goforth's residence was searched on November 27, 1995. By his own admission to
10 investigating officers at the time, Goforth had downloaded pictures of young boys that
11 potentially could include child pornography prior to the execution of the search warrant. The
12 forensic evidence did not at all establish that Goforth had not looked at or did not know the
13 content of the files that he had downloaded, which he had downloaded to a location on his
14 computer that strongly supported an inference of an intent to conceal the files. At bottom,
15 petitioner's claim of actual innocence boils down the reliability of his own self-serving
16 assertion that – his guilty plea notwithstanding – he had not yet looked at the files that he had
17 downloaded on his computer, over a forty-five minute period, at some point prior to the arrival
18 of the police. The forensic report does not substantiate that self-serving assertion.

19    Goforth's claim that he had not yet looked at the child pornography files that he had
20 downloaded on his computer on the day that it was seized does not establish that it is more
21 likely than not that no reasonable juror would have found him guilty beyond a reasonable
22 doubt. The defense of "I was not aware of what was in the files that I downloaded on my
23 computer" hardly is unheard of in child pornography cases. Nor is it a defense that often
24 carries the day in such cases. Petitioner's self-serving claim that he did not knowingly and
25 willfully possess the child pornography that he downloaded on his computer – a claim that he
26 made at the very outset and now repeats – does not tend to demonstrate that, had he instead
27 elected to go to trial based on this defense, it is more likely than not that no reasonable juror
28 would have found him guilty beyond a reasonable doubt.

The Court additionally has reviewed petitioner's affidavit (#29) that he submitted in response to the supplemental exhibits.

In the affidavit, petitioner asserts, *inter alia,* that the Wideman forensic report did not indicate that the examiner found evidence of a history or established pattern of downloading and deleting illegal images. The State was not required to prove any such history or pattern, however, to support a conviction for the offense to which Goforth pled guilty. The absence of such a finding in the report does not establish actual innocence of the crime to which Goforth pled guilty.[18]

Petitioner further notes that the Wideman report refers to images that were not illegal, and he maintains that this reference signifies that twelve charges allegedly based on these images were improperly stacked on his initial charges. Petitioner's reference pertains to a separate subdirectory found by the examiner that contained a zip file that in turn contained twelve compressed graphic image files. The report states that "[w]hile not constituting child pornography, the existence of the files is relevant to the relationship between" Goforth and the child that he was alleged to have been stalking.[19] This portion of the report does not negate the fact that Wideman also found six files of "graphic images depicting children under the age of sixteen, engaged in clearly sexual conduct." Moreover, any allegation as to stacking of charges has nothing to do with the timeliness of the petition in this matter.[20]

/ / / /

---

[18] Goforth pled guilty to possession of a visual presentation depicting sexual conduct of a person under sixteen years of age, in violation of N.R.S. 200.700 and N.R.S. 200.730. These statutes include no element requiring proof that the offender had a history or established pattern of downloading and deleting illegal images. A defendant might refer to the absence of a finding of prior downloads and deletions while claiming a lack of knowledge of what was in the files that he had downloaded and concealed on his computer. However, the mere availability of such an argument or inference does not establish that it is more likely than not that no reasonable juror would find Goforth guilty beyond a reasonable doubt.

[19] #28, Ex. F, at 189-90.

[20] The remaining assertions in the affidavit similarly have no bearing on the timeliness of the petition filed and/or pertain to matters that go beyond the allegations and claims asserted in the amended petition. The Court notes that – after the dismissal of two state petitions for untimeliness, the dismissal of two federal petitions for lack of exhaustion, and the assertion of the time-bar issue from the outset in this matter (see ## 8 & 13) – petitioner has had ample notice of the need to, *inter alia*, timely exhaust and plead claims.

The Court accordingly holds, on the showing and arguments made, that the petition is time-barred, that the evidence relied upon by petitioner does not establish a basis for either statutory or equitable tolling, that petitioner has not presented a viable claim of actual innocence, and that petitioner has not presented evidence warranting an evidentiary hearing on any issue pertaining to the federal one-year time bar. The petition therefore will be dismissed with prejudice as time-barred.

The Court thus does not reach the procedural default issue.

IT THEREFORE IS ORDERED that the respondents' motion (#20) to dismiss is GRANTED and that the petition, as amended, shall be DISMISSED with prejudice as time-barred. The Clerk of Court shall enter final judgment accordingly.

DATED: March 14, 2008

_____
ROBERT C. JONES.
United States District Judge

(gsk)